29 P.3d 1249 (2001)
144 Wash.2d 570
1519-1525 LAKEVIEW BOULEVARD CONDOMINIUM ASSOCIATION, a Washington corporation, Robert A. Ferguson, Douglas A. Taylor, Bruce E. Curnutt, Bruce A. McLaughlin, Frank Y. Fukui and Penny Fukui, husband and wife and the marital community composed thereof, Apartment Sales Corporation, a Washington corporation, Michael K. Williams and Jane Doe Williams, husband and wife and the marital community composed thereof, Gordon Capretto and Jane Doe Capretto, husband and wife and the marital community composed thereof, Petitioners,
v.
APARTMENT SALES CORPORATION, a Washington corporation, Michael K. Williams and Jane Doe Williams, husband and wife and the marital community composed thereof, Gordon Capretto and Jane Doe Capretto, husband and wife and the marital community composed thereof, Defendants,
Geotech Consultants, Inc., a Washington corporation, Stephen Sullivan, d/b/a Stephen Sullivan Architects, Martha Rose, d/b/a Rose Construction Management, Gary Swenson and Jane Doe Swenson, husband and wife and the marital community composed thereof, and RSP/EQE, Inc., a Washington corporation, Respondents, and
The City of Seattle, a municipal corporation, Defendant.
No. 70324-8.
Supreme Court of Washington, En Banc.
Argued May 24, 2001.
Decided August 30, 2001.
*1251 Douglas Roach, Marisa Bavand, Seattle, Amicus Curiae on Behalf of Associated General Contractors, et al.
Michael McKay, Peter Gonick, Seattle, Amicus Curiae on Behalf of American Institute of Architects, et al.
Michael Dodd, James Findlay, Seattle, Amicus Curiae on Behalf of American Society of Civil Engineers, et al.
John Welch, Seattle, Amicus Curiae on Behalf of National Association of Independent.
Greg Overstreet, Olympia, Amicus Curiae on Behalf of Liability Reform Coalition.
Bryan Harnetiaux, Debra Stephens, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers.
Timothy Ford, Olympia, Amicus Curiae on Behalf of Building Industry Association of Washington.
Koler & Fitzsimmons, Rand Koler, Kevin Ireland, Seattle, for Petitioners.
Lane, Powell, Spears & Lubersky, Linda Clapham, Stanton Beck, Mark O'Donnell, Charles Willmes, Graham & Dunn, Stephen Goodman, Estera F. Gordon, Douglas Green, Seattle, for Respondents.
*1250 OWENS, J.
The petitioners challenge the constitutionality of RCW 4.16.310, the builders' limitations statute, on grounds that it denies equal protection of law to various classes who are excluded from asserting the statute as a defense. This statute barred the petitioners' claims against the contractors involved in this case. The Court of Appeals concluded that the statute did not violate the equal protection clause of the federal constitution or the privileges and immunities clause of the state constitution. We agree and affirm the decision of the Court of Appeals.

FACTS
In 1988, the Apartment Sales Corporation (ASC) purchased land located on a steep section of Capital Hill in Seattle. In order to develop the property, ASC hired Geotech Consultants, Inc. (Geotech) to evaluate the soil conditions and provide other engineering services related to the construction of the foundation. Similarly, ASC retained architect Stephen Sullivan (Sullivan) and structural engineer Gary Swenson (Swenson) to assist in the construction of three condominiums on the site. Finally, ASC hired Martha Rose (Rose) to act as the construction manager for the project.[1] The condominiums were completed in 1990, and the City of Seattle issued a certificate of occupancy on August 27, 1990. None of the contractors continued to provide construction services beyond 1990.
The first unit was sold to Bruce Curnutt (Curnutt) and Bruce McLaughlin (McLaughlin) in November 1990. The other units were sold to Frank and Penny Fukui (Fukuis) in June 1991 and to Robert Ferguson (Ferguson) in January 1992. In 1994, Douglas Taylor (Taylor) acquired an undivided one-half interest in the third unit owned by Ferguson.[2] At the time the units were purchased, the sales agent for ASC made representations to the buyers that the condominiums *1252 had been designed to remain intact even if the soil slid away.
On January 3, 1997, the three condominiums were extensively damaged due to a landslide caused by a severe rainstorm. In due course, the Association brought suit against ASC, the contractors, and the City of Seattle. This appeal involves only the contractors. The contractors collectively argued that the Association's claims against them were barred by RCW 4.16.310, and the trial court granted summary judgment to all of the contractors. The Association appealed the decision; however, the Court of Appeals concluded that RCW 4.16.310 was not unconstitutional. The Association again sought review, which this court granted.

ISSUES
(1) A proviso in RCW 4.16.310 provides that the statute may not be "asserted as a defense by any owner, tenant or other person in possession and control of the improvement at the time such cause of action accrues." Similarly, RCW 4.16.300 provides that the statute of repose "shall not apply to claims or causes of action against manufacturers." Because these groups may not assert the statute as a defense, does RCW 4.16.310 violate the equal protection clause of the federal constitution or the privileges and immunities clause of the state constitution?
(2) RCW 4.16.310 provides that any claims relating to the construction of improvements upon real estate must accrue within six years after the completion of the improvement. Because its claims did not accrue within six years, the Association's claims against the contractors are barred. Since the Association's claims were barred before it could even file a claim, does RCW 4.16.310 violate article I, section 10 of the state constitution by denying access to the courts to the Association?

ANALYSIS

(a) Equal Protection
The Association[3] asserts that RCW 4.16.310 is unconstitutional because it violates the equal protection clause[4] of the federal constitution and the privileges and immunities clause[5] of the state constitution. The court has previously held that RCW 4.16.310 does not violate the equal protection clause. See Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co., 81 Wash.2d 528, 532, 503 P.2d 108 (1972) (holding that the statute does not deny equal protection because the statute limits the liability of all people who create or alter improvements upon real property). Nevertheless, because *1253 the Yakima Fruit court did not consider the exact arguments raised in this case, we will again consider whether RCW 4.16.310 is unconstitutional.
Since the Association has not asserted that the court should conduct an independent state constitutional analysis, we will scrutinize the statute in accordance with the rules for equal protection analysis. The parties have agreed that we should analyze the statute by applying minimum scrutiny or the rational basis test. When applying minimum scrutiny, we will conclude that the statute is constitutional if:
(1) all members of the class created within the statute are treated alike;
(2) reasonable grounds exist to justify the exclusion of parties who are not within the class; and
(3) the classification created by the statute bears a rational relationship to a legitimate purpose of the statute.
DeYoung v. Providence Med. Ctr., 136 Wash.2d 136, 144, 960 P.2d 919 (1998). More succinctly, "[u]nder the rational basis test the challenged law must be rationally related to a legitimate state interest." Seeley v. State, 132 Wash.2d 776, 795, 940 P.2d 604 (1997). In addition, the party challenging the statute must show that it is unconstitutional beyond a reasonable doubt. Id. at 795-96, 940 P.2d 604.
When conducting equal protection analysis, we must also consider whether the statute has a legitimate purpose. One recognized purpose of RCW 4.16.310 is that it "protect[s] contractors from the possibility of being held liable for the acts of others." Jones v. Weyerhaeuser Co., 48 Wash.App. 894, 899, 741 P.2d 75 (1987). Thus, when a contractor no longer retains control, she is less likely to be held liable for damage caused by the owner or by natural forces. Id. Another recognized purpose of the statute is that it limits the discovery rule and avoids placing too great a burden on defendants who construct improvements upon real estate. Hudesman v. Meriwether Leachman Assocs., 35 Wash.App. 318, 321, 666 P.2d 937 (1983). Finally, a general purpose of statutes of limitation and repose is that such statutes serve to prevent plaintiffs from bringing stale claims when evidence might have been lost or witnesses might no longer be available. See Douchette v. Bethel Sch. Dist. No. 403, 117 Wash.2d 805, 813, 818 P.2d 1362 (1991).
After determining that the statute has a legitimate purpose, we must identify the classes of people that are affected by the statute. RCW 4.16.300 provides that the statute of repose:
shall apply to all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property.[6]
In addition, RCW 4.16.300 states that RCW 4.16.310 shall not apply to manufacturers. Similarly, RCW 4.16.310 prevents "any owner, tenant or other person in possession and control of the improvement at the time such cause of action accrues"[7] from asserting the statute as a defense. Thus, we will consider whether the statute denies equal protection to manufacturers and owners.

(1) Manufacturers
This court has previously recognized that rational distinctions exist between manufacturers and people who construct improvements upon real estate. See Condit v. Lewis Refrigeration Co., 101 Wash.2d 106, 110-11, 676 P.2d 466 (1984). Recognized rational distinctions between these two classes include the following:
(1) Manufacturers have liability under products liability law, an independent *1254 area of law separate from basic negligence or breach of contract, and this area of law has its own statutes of limitation, which are keyed to the useful life of the product. See Condit, 101 Wash.2d at 112, 676 P.2d 466; RCW 7.72.060.
(2) Manufacturers produce standardized goods from pretested designs and in large quantities whereas contractors make a unique product designed to deal with the distinct needs of a particular piece of real estate. Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822, 830 (Mo.1991); see also Freezer Storage, Inc. v. Armstrong Cork Co., 476 Pa. 270, 277, 382 A.2d 715 (1978).
(3) Manufacturers produce their goods in a controlled environment whereas contractors build improvements upon real estate in an ever-changing environment. Blaske, 821 S.W.2d at 830; Freezer Storage, 476 Pa. at 277, 382 A.2d 715.
(4) Manufacturers do not contribute to the structural aspects of real estate improvements; nor do they engage in any of the construction activities enumerated in RCW 4.16.310. Condit, 101 Wash.2d at 110-11, 676 P.2d 466.
Because contractors and manufacturers operate in substantially different environments, we conclude that the legislature's exclusion of manufacturers was rationally related to its purpose of protecting people who construct improvements upon real estate from excessive liability.

(2) Owners
We also conclude that rational distinctions exist between owners of real property and those who construct improvements upon real estate. Such rational distinctions include the following:
(1) Owners of real property have limited liability based on the common law duties; the duty owed to the third party is dependent upon the status of the third party, whether she is an invitee, licensee, or trespasser. Iwai v. State, 129 Wash.2d 84, 90-91, 915 P.2d 1089 (1996). In contrast, contractors could be liable to an unlimited class of plaintiffs, anyone who is injured by the improvement. See Freezer Storage, 476 Pa. at 276, 382 A.2d 715.
(2) Owners may avoid liability by exercising reasonable care to protect third parties from danger and by performing regular inspections and maintenance. Iwai, 129 Wash.2d at 96, 915 P.2d 1089. In contrast, contractors do not have the ability to inspect and maintain the improvement. Freezer Storage, 476 Pa. at 276, 382 A.2d 715.
(3) Owners may ultimately avoid liability by simply exercising discretion regarding whom they allow to come upon the property. In contrast, contractors may not exclude third parties from the property. Freezer Storage, 476 Pa. at 276, 382 A.2d 715.
(4) Insurance policies and pricing are different for an ownership interest than for construction related activities. Freezer Storage, 476 Pa. at 276, 382 A.2d 715.
(5) In the case of an owner who also constructed the improvement, the owner will be more likely to retain memories and records relating to the construction of the improvement. Similarly, an owner is more likely to be able to identify natural forces or third party actions that may have contributed to an injury.
(6) When an owner both constructs and controls an improvement, it is more difficult for a court to determine when construction activities were completed.
Since owners of real property have independent legal duties and independent protections against liability, we conclude that the legislature's exclusion of owners bears a rational relationship to the legislature's legitimate purpose of protecting contractors from excessive liability.[8]
*1255 The Association argues that RCW 4.16.310 unfairly shifts liability; however, liability is not shifted because a contractor's negligence will be considered for purposes of joint and several liability. RCW 4.22.070(1). In cases involving multiple defendants, RCW 4.22.070(1) provides that "entities with any... individual defense against the claimant" shall be among the parties who shall be assigned a share of fault. The owner would not be liable for the contractor's share. Moreover, if the defendants become jointly liable, no defendant would be liable for the contractor's share of fault. RCW 4.22.070(1)(b).

(b) Access to Courts
The Association also requests that we conclude that RCW 4.16.310 is unconstitutional because it contravenes article I, section 10 of the state constitution. This section provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." CONST. art. I, § 10. The Association invites this court to conclude that this provision of the state constitution implies a right to a remedy in all cases where a plaintiff has suffered a legal injury.
We have previously held that the state constitution does not contain any guaranty that there shall be a remedy through the courts for every legal injury suffered by a plaintiff. See Shea v. Olson, 185 Wash. 143, 160-61, 53 P.2d 615 (1936). However, the Shea court did not directly address article I, section 10 of the state constitution when it made this conclusion. See id. Nevertheless, we decline at this time to determine whether a right to a remedy is contained in article I, section 10 of the state constitution.
We adopt the view of the Supreme Court of Oregon that "[i]t has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purpose of protecting a recognized public interest." Josephs v. Burns, 260 Or. 493, 503, 491 P.2d 203 (1971), abrogated on other grounds by Smothers v. Gresham Transfer, Inc., 332 Or. 83, 23 P.3d 333 (2001). Similarly, the Supreme Court of Missouri has concluded that its open courts provision does not require "that a plaintiff can always go to court and obtain a judgment on the claim asserted." Blaske, 821 S.W.2d at 832. Because we recognize that the legislature has broad police power to pass laws tending to promote the public welfare, we decline at this time to determine whether article I, section 10 of the state constitution guarantees a right to a remedy.

CONCLUSION
We conclude that RCW 4.16.310 does not violate either the federal or state constitutions. The Association has failed to show that RCW 4.16.310 violates the equal protection clause because the classifications created by the statute bear a rational relationship to the purposes of the statute. We recognize that the legislature has broad power to enact laws to benefit society, and we have generally shown deference to the decisions of the legislature, except where the legislature has acted in an arbitrary or discriminatory manner. Similarly, we recognize that the legislature has broad authority under the police power to pass laws, like statutes of limitation and repose, that tend to promote the public welfare. Because the legislature may alter or restrict a common law right without foreclosing that right, we decline to determine whether a right to a remedy is implied by the language of article I, section 10 of the state constitution.
We affirm the decision of the Court of Appeals.
ALEXANDER, C.J., SMITH, JOHNSON, SANDERS, IRELAND, CHAMBERS, JJ., BROWN, J.P.T., concur.
MADSEN, J., concurs in result only.
NOTES
[1] From this point onward, Geotech, Sullivan, Swenson and Rose shall be collectively referred to as "the contractors."
[2] Curnutt, McLaughlin, Fukuis, Ferguson, and Taylor collectively comprise the membership of the 1519-1525 Lakeview Boulevard Condominium Association. From this point onward, these parties shall be collectively referred to as "the Association."
[3] The contractors assert that the Association does not have standing to challenge RCW 4.16.310 on grounds of equal protection because the Association is not itself a member of an excluded class. To determine whether a party should have standing, we consider (1) whether the asserted interest is "`within the zone of interests'" that are protected by the statute; and (2) whether the plaintiff has suffered an "`injury in fact.'" Save A Valuable Env't (SAVE) v. City of Bothell, 89 Wash.2d 862, 866, 576 P.2d 401 (1978) (quoting Ass'n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). We conclude that the Association has a sufficient interest in the outcome so as to justify its having standing in this case. See City of Seattle v. State, 103 Wash.2d 663, 668-69, 694 P.2d 641 (1985) (holding that the city has standing to challenge RCW 35.13.165 on grounds of equal protection because the city had a direct interest in the constitutionality of its annexation process). Other jurisdictions have reached a similar result when parties have challenged the constitutionality of other builders' limitation statutes. See, e.g., Turner Constr. Co. v. Scales, 752 P.2d 467, 470 (Alaska 1988) (holding that "[t]he injured plaintiffs' interest in invalidating the statute is as great as that of the materialman or the defendant in possession"); Sandoe v. Lefta Assocs., 559 A.2d 732, 736 n. 4 (D.C.1988) (holding that the plaintiffs suffered an "injury in fact" because they had suffered significant injuries and might not be able to recover damages due to the statute of repose); Klein v. Catalano, 386 Mass. 701, 714, 437 N.E.2d 514 (1982) (holding that "the plaintiff has standing in a representative capacity to raise the rights of the potential defendants excluded from the statute").
[4] The equal protection clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."
[5] The privileges and immunities clause provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." CONST. art. I, § 12.
[6] For convenience, all of these enumerated activities shall be collectively referred to as "construction" activities.
[7] The owners, tenants, and others in possession and control of the improvement shall be collectively referred to as "owners."
[8] The Association has also suggested that RCW 4.16.310 denies equal protection to vendors of real estate. We have previously recognized that the statute does not apply to vendors. See Pfeifer v. City of Bellingham, 112 Wash.2d 562, 568, 772 P.2d 1018 (1989). We conclude that the exclusion of vendors from the protection of the statute is rational because (1) a vendor's potential liability extends to a more limited class of plaintiffs, see Freezer Storage, 476 Pa. at 276, 382 A.2d 715; and (2) a vendor's liability arises from an independent area of law, which is subject to an independent statute of.