782 P.2d 704

**George R. DORMAN,
Plaintiff/Appellant,**

v.

**SWIFT AND COMPANY, a Delaware corporation; Esmark, Inc., an Illinois corporation, Defendants/Appellees.**

**No. CV–88–0130–PR.**

Supreme Court of Arizona,
En Banc.

Oct. 19, 1989.

---

Hofmann, Salcito, Stevens & Myers, P.A. by Frank Verderame, Phoenix, for plaintiff/appellant.

Gust, Rosenfeld & Henderson by Richard A. Segal and DeAnn Willis, Phoenix, for defendants/appellees.

MOELLER, Justice.

## JURISDICTION

This is a personal injury action by an employee of a meat-packing plant against the plant's former owner. The plaintiff brought the action on dual theories of negligence and strict liability in tort. The trial court, on a motion for summary judgment, ruled that strict liability did not apply and that the negligence claim was meritless because the former owner owed no duty to the plaintiff. The court of appeals affirmed. We granted review solely to determine the propriety of the summary judgment on the negligence claim. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

## ISSUE PRESENTED

We granted review on three of the four issues on which plaintiff petitioned this court. The three, when distilled, are resolved by consideration of the following issue: Whether § 352 of the *Restatement (Second) of Torts* bars a personal injury negligence action against the maker of a product, when the maker is also coincidentally the vendor of real property upon which the product is located.

## FACTS

In the late 1960s, the defendant, Swift & Co., designed and constructed a meat-packing plant. In 1973, Swift assembled and installed at the plant an inclined conveyor, which transported cattle carcasses from one part of the plant to another. Swift purchased the component parts of the conveyor from Cincinnati Butcher Supply Company, but designed, constructed, and installed the electrical system for the conveyor itself. Swift made all decisions regarding the assembly of the inclined conveyor, and the design and installation of the electrical system.

Plaintiff contends that Swift negligently manufactured, installed, and created the inclined conveyor machine. In particular, plaintiff contends that two sets of on/off buttons, one for the inclined conveyor and another for a chute, were improperly placed adjacent to each other in two different locations with no appropriate labelling to distinguish between them. Swift also installed the on/off switches without safety features designed to prevent the inadvertent starting of machinery; the switches also were not equipped with an electrical component that would delay the start of the conveyor and sound a warning bell after the start button is pressed.

For purposes of summary judgment, sufficient evidence exists in the record to show that the design and installation were below industry standards for the safety of persons likely to be working around such machinery. The machinery at the time of the accident was in substantially the same condition as it was when Swift installed it in 1973.

In 1979, Swift sold the meat-packing plant to Southwest Beef Co-op, but repossessed it four years later and, through its successor in interest, Esmark, Inc., sold the plant to Sunland. For purposes of plaintiff's claim, Esmark stands in the shoes of Swift, although for other purposes, such as various indemnity agreements, this might not be the case. Plaintiff was employed by Sunland.

On the day of the accident, a chain link on the inclined conveyor broke; to repair it, plaintiff and another employee turned the machine off and climbed up on the conveyor to relink the chain. Plaintiff was sitting on the inclined conveyor working on the unit when, at another location at the plant, another employee was told to activate the cattle chute. Attempting to do so, that employee pressed the wrong set of on/off buttons. Instead of the cattle chute starting, the inclined conveyor started and dragged plaintiff into the machine, causing

serious and permanent injuries to his leg. He ultimately brought claims against numerous parties; however, we deal here only with his negligence claim against Swift as the assembler and installer of the conveyor and as the designer and installer of the electrical system for the conveyor.

Swift moved for summary judgment in the trial court on the negligence claim, relying on § 352 of the *Restatement (Second) of Torts.* The trial court ruled that Swift owed no duty to the plaintiff and granted the motion. The trial court did not specifically refer to § 352, nor did it specifically make a factual or legal determination of whether the inclined conveyor and accompanying electrical system constituted real property, personal property, a fixture, or some other type of property. Although the issue was not raised or briefed, the court of appeals determined that the machinery in question was a "fixture." Based at least in part on that holding, the court of appeals concluded that § 352 provided immunity to the former owner for negligence in its design and manufacture. *Dorman v. Swift and Co.,* 157 Ariz. 355, 357, 757 P.2d 1064, 1066 (App.1988).

## DISCUSSION

The trial court, while not expressly referring to § 352 of the *Restatement,* granted Swift's motion for summary judgment on the negligence claim which was based on § 352. The court stated "that there is no duty imposed upon those defendants as the vendor of the real property and equipment." Minute Entry, 3/5/87. Section 352 provides:

> Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.[1]

1. Section 353 carves out an exception to the general rule of nonliability for undisclosed dangerous conditions known to the vendor. The exception applies when the vendor conceals or fails to disclose to his vendee a condition that poses an unreasonable risk to persons on the land. *See Century Display Manuf. Corp. v. D.R. Wager Const.,* 71 Ill.2d 428, 17 Ill.Dec. 664, 376 N.E.2d 993 (1978). Plaintiff does not contend § 353 applies here.

Section 352 has its roots in the common law doctrine of *caveat emptor*—let the buyer beware. *See Prosser & Keeton on Torts,* § 64 at 447 (5th ed. 1984). The vendee is presumed to have inspected the premises prior to conveyance. *Id.* Thus, "the deed of conveyance ... is taken to represent the full agreement of the parties, and to exclude all other terms and liabilities." *Restatement (Second) of Torts* § 352 comment a. The theoretical basis for this rule is that responsibility should follow control; once the sale is complete, the vendor no longer has any control over the property and, therefore, cannot go onto the realty and remedy any dangerous condition existing on the property. *Prosser & Keeton, supra* at 446–47.

This court has not yet adopted § 352 as the rule for Arizona.[2] However, the court of appeals appropriately pointed out in its decision in this case that "[i]t has long been the law in Arizona that the courts will follow ... the Restatement, ... except where a different rule has been adopted by statute or a decision of the Arizona Supreme Court." *Dorman v. Swift and Co.,* 157 Ariz. at 356–57, 757 P.2d at 1065–66 (App.1988) (citations omitted). The issue here is whether § 352 applies *to this case.* We note that both plaintiff and defendant take extreme positions with respect to the general applicability of § 352. We decline to accept their invitation to decide the abstract question whether § 352 always or never applies. Because we decide that § 352 does not apply to this case, we leave open the question of whether it might apply in a different case.

Plaintiff argued that § 352 is inapplicable, principally because Swift sold the machinery separately from the land. The court of appeals rejected that argument because it concluded the machinery was a fixture and therefore, realty, to which § 352 does apply. Assuming liability turned on whether the inclined conveyor was a fixture, the court of appeals should have remanded to the trial court for a determination of that issue because it had not been raised or litigated by the parties. The parties may have been able to submit additional evidence on the fixture "issue." *See Thompson v. Arizona Dept. of Economic Security,* 127 Ariz. 293, 295, 619 P.2d 1070, 1072 (App.1980) (appellate court limited to considering evidence which was presented to trier of fact).

■ We conclude, nevertheless, that liability does not turn on the question of whether the equipment in question technically became a fixture. No other court has decided the applicability of § 352 by considering whether the "dangerous condition" constitutes a fixture. We decline to fashion a rule of liability around the fortuitous circumstance of whether the product in question meets the legal test of a fixture. *See Murray v. Zerbel,* 159 Ariz. 99, 764 P.2d 1158 (App.1988) (describing three-part test for a fixture in Arizona).

■ We also consider a mere fortuity the fact that in this case the maker of the product happens to be the vendor of the real property. Were the maker of the product not also the vendor of the real property, it would be liable as the maker for its acts of negligence. *See Prosser & Keeton on Torts,* § 101 at 708 (5th ed. 1984). If § 352 is to apply at all in Arizona, it certainly cannot operate to insulate the maker of a product from its negligence where the product is wholly unrelated to the use or enjoyment of the land. Section 352 relates to the liability of a vendor of land after the transfer of title and possession of realty, not to the responsibility of a manufacturer of a product. *See, e.g., Preston v. Goldman,* 42 Cal.3d 108, 227 Cal. Rptr. 817, 720 P.2d 476 (1986) (applied § 352; artificial pond on residential property); *Bailey for Bailey v. Gammell,* 34 Wash.App. 417, 661 P.2d 612 (1983) (applied § 352; faulty basement stairs); *Livingston v. Begay,* 98 N.M. 712, 652 P.2d 734 (1982)

---

2. We are aware that Division 2 of the court of appeals applied §§ 352 and 353 of the Restatement in *Cothrun v. Schwartz,* 156 Ariz. 459, 460–61, 752 P.2d 1045, 1046–47 (App.1988).

Notwithstanding *Cothrun,* this court leaves open the broader question of whether these sections of the Restatement apply in Arizona until a case squarely presents us with the question.

**232**

(applied § 352; faulty gas heater in a hotel).[3]

We hold that plaintiff's claim against Swift for negligence based on the construction and design of the inclined conveyor is not barred merely because of the fortuitous circumstance that Swift was both the manufacturer of the product and the vendor of realty upon which the product was located. All we decide today is that plaintiff's claim is not barred by § 352. Obviously, in order to recover under a negligence theory, plaintiff must still prove the traditional elements necessary to establish a cause of action for a negligently manufactured product.

### DISPOSITION

We reverse summary judgment for Swift on the negligence claim and vacate the court of appeals' opinion. Because we only granted review on the negligence claim, we leave intact the trial court's summary judgment on the strict liability claim. We remand to the trial court for further proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.

---

**3.** We recognize that no court has explained the applicability of § 352 as we do here; however, no court has encountered this precise issue. The cases decided pursuant to § 352 demonstrate its purpose and reach, and thereby allow us to distill a rule that makes sense under the circumstances.